# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| AMY MITCHELL, an individual, | CASE NO. 09cv1554-LAB (JMA) |
|---|---|
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| CORRECTIONS CORPORATION OF AMERICA, a Maryland Corporation and DOES 1 through 20, inclusive, | |
| Defendants. | |

This case is once again before the Court on Corrections Corporation of America's motion to dismiss. The Court previously dismissed Mitchell's complaint because it was a run-on commentary of grievances that, at best, gave rise "to a reasonable inference that her work environment at CCA was extremely unpleasant." That, of course, is not only insufficient to state a claim upon which legal relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, but it also violates the requirement of Rule 8 that a complaint must contain a "*short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).

Mitchell filed an amended complaint on March 1, 2010, and CCA again moved to dismiss just ten days later. On April 16, 2010, Mitchell voluntarily dismissed three of her seven claims. The claims that remain are for (1) wrongful termination in violation of public

policy, (2) employment discrimination based on retaliation, (3) intentional infliction of emotional distress (IIED), and (4) negligent infliction of emotional distress (NIED). CCA doesn't address the wrongful termination claim in its motion to dismiss, so the Court presumes it is prepared to answer as to that claim. The Court will address the retaliation and emotional distress claims in sequence.

## I.    Legal Standard

The same legal standard that the Court applied to Mitchell's original complaint will apply to her amended complaint.

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). A complaint's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While a court must draw all reasonable inferences in the plaintiff's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, no legal conclusions need to be accepted as true. *Ashcroft*, 129 S.Ct. at 1949. A complaint doesn't suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* That includes a mere formulaic

//

recitation of the elements of a cause of action; this will not do either. *Bell Atlantic Corp.*, 550 U.S. at 555.

## II.     Retaliation

Mitchell's fifth claim is for "Employment Discrimination Based on Retaliation" under the California Fair Employment and Housing Act, Cal. Gov. Code § 12940(h). As stated, the claim is a little perplexing. An allegation of discrimination typically suggests that similarly situated individuals are treated differently on the basis of some personal characteristic — race, religion, disability, age, and the like — but Mitchell doesn't allege that she was retaliated against while others who could or should have been were not. Rather, she maintains she complained about improper and illegal business practices, and about harassment "by her male supervisors," and suffered "retaliatory employment actions" as a result. (FAC ¶¶ 63–64.) That's just a straightforward retaliation claim.

Section 12940(h) of the California Government Code, upon which Mitchell's claim is based, makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). What practices does section 12940 forbid? For Mitchell's purposes, the relevant subsection is probably subsection (a), which makes it unlawful for an employer

> because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person . . . to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov. Code § 12940(a). Mitchell says she complained about "improper and illegal business practices," but those aren't within the purview of section 12940, and so section 12940(h) can't give rise to a retaliation claim for speaking out about them. But Mitchell also says she complained about "being harassed by her male supervisors," and such harassment *may* be covered by section 12940(a) insofar as it forbids sex-based discrimination in the conditions of employment. Opposing such discrimination would be a protected activity under

section 12940(h), meaning it could not be the basis of an adverse employment action by CCA.

A few problems with Mitchell's claim remain. First, the mere fact that Mitchell was allegedly harassed by *male* supervisors is unavailing; that says nothing about the nature of the harassment, or more importantly, its motivation. It isn't harassment by male supervisors that section 12940(a) targets, but discrimination on the basis of sex in employment decisions and conditions. If all Mitchell has to say is that she was harassed by male supervisors, she can't maintain a claim of retaliation under section 12940. Likewise, Mitchell's allegation, on information and belief, that "Defendants, and each of them, were motivated to discriminate against her because of her gender (female)," is insufficient to save the claim. (*See* FAC ¶ 31.) *Ashcroft*, 129 S.Ct. at 1949.

Second, Mitchell's complaint is unclear as to whether she complained about allegedly unsavory practices at CCA and was *then* harassed in retaliation on the basis of her sex (in which case there's no section 12940(h) violation), or whether she was harassed on the basis of her sex, complained about *that*, and was then terminated (in which case there may be a section 12940(h) violation). For example, in paragraph 10 of her complaint, Mitchell lists several "possibly illegal business [sic] being perpetuated at CCA San Diego," and then, in paragraph 11, she says she "complained to her management about the improper and possibly illegal business practices, with limited and in most cases, no success." As the Court has already noted, section 12940(a) isn't concerned with improper business practices, and section 12940(h) doesn't imply a cause of action for complaining about them. In paragraph 12 of the complaint, Mitchell alleges,

> When she continued her efforts to do her job as HR Manager through insistence upon proper business practices and adherence to CCA policies and procedures, Plaintiff became the subject of continual and pervasive discrimination and harassment by her managers and co-workers in the workplace.

Here, the allegation is that Mitchell was harassed in retaliation for vocalizing her concerns about CCA's practices, but again, business practices aren't the concern of section 12940, and complaining about them isn't actionable under section 12940(h). But finally, in

paragraph 14 of her complain, Mitchell insinuates for the first time that she actually complained about *harassment*:

> Plaintiff continued complaining to her superiors about the improper business practices and the hostility she was experiencing in the workplace. When Plaintiff complained and sought relief from her hostile work environment, the degree and intensity of the abuse, discrimination and harassment increased. Plaintiff believes, and thereon alleges, that the increase in workplace hostility toward her was in retaliation for her complaints about being harassed and discriminated against, as was her right to do.

If Mitchell were serious about pleading a claim under section 12940(h), she would have taken greater care to allege that she suffered harassment, complained about that harassment, and was then terminated in retaliation. It is apparent from even a rushed reading of section 12940 that it isn't concerned with improper business practices, and isn't of any assistance to those who speak out about them.

Third, even assuming Mitchell was harassed, and that she complained about that harassment, her complaint contained virtually no allegations to suggest that the harassment she endured was based on her sex, or was motivated by sexism in any way. In three separate paragraphs in her complaint, Mitchell lists "discriminatory, harassing and retaliatory actions" taken against her by CCA, but there is barely a fact alleged in any to support a claim under section 12940. Paragraph 19, for example, alleges that: (1) Mitchell was called a "shop steward" by the prison warden for reporting an employee's worker's compensation injury; (2) she was reprimanded for insisting that the warden's investigation report be reviewed in private, outside of his presence; (3) she was denied the assistance of subordinate employees in the performance of her job duties; (4) she was reprimanded and threatened by an assistant warden for insubordination; (5) an assistant warden undermined her authority as manager of human resources by instructing her assistant to schedule job interviews for unqualified applicants; (6) the assistant warden set up unrealistic interview goals; and (7) she was accused of being a union representative for filing workers compensation claims. Not only does this string of alleged injustices reveal that Mitchell has failed to correct the core defect of her complaint as identified by the Court when it first

dismissed it, not one of these identified acts supports the inference that Mitchell was discriminated against on the basis of her sex. *Ashcroft*, 129 S.Ct. at 1949. The same can be said of the other paragraphs in which she identifies specific instances of harassment she suffered. (*See* FAC ¶¶ 15, 26.)

There is one exception: Twice in her complaint, Mitchell alleges that she was sexually harassed and battered by a co-worker, and then pressured by management to revise her complaint so the accused wouldn't lose his job. (*See* FAC ¶¶ 15-v, 26-iv.) But this allegation is lumped together with a host of others having nothing to do with discrimination or harassment based on sex, it is directed at a co-worker rather than CCA, and Mitchell never alleges that she complained about this episode in particular and that *that* complaint led to her termination. It is insufficient, as pled, to give rise to a cause of action under section 12940(h).

The fourth fault with Mitchell's retaliation is also the most significant: Mitchell voluntarily dismissed her claims for "Employment Discrimination Based on Gender," "Employment Discrimination Based on Harassment," and "Employment Discrimination Based on Sexual Harassment." (Doc. No. 35.) The Court wonders why, if Mitchell has no claim for sex discrimination, or harassment, or sexual harassment — or no claim worth pursuing, anyway — she *does* have a claim for suffering and complaining about the same and being retaliated against as a result.

CCA argues that Mitchell's retaliation claim fails because she does not allege facts to support the inference that she was terminated *because* she complained about discrimination. CCA relies on *Morgan v. Regents of the Univ. of California*, 88 Cal. App. 4th 52, 69, which laid out the following three elements of a retaliation claim: (1) plaintiff engaged in protected activity; (2) was thereafter subjected to an adverse employment action, and (3) there was some causal link between the protected activity and the adverse action. What CCA and Mitchell both miss is that the protected activity under section 12940(h) is opposing or complaining about that which the rest of section 12940 forbids. For Mitchell's purposes, the relevant prohibition — though her complaint isn't explicit on this — appears in section

12940(a), which prohibits discrimination on the basis of, among other things, sex. But Mitchell pleads too few facts to support the inference that she suffered sex discrimination in the first place. She does complain about harassment "by her male supervisors," but the nature of that harassment, as far Mitchell describes it, is completely devoid of sexual or sexist content, and it's no cure to the paucity of factual pleadings that Mitchell asserts, on information and belief, that "Defendants . . . were motivated to discriminate against her because of her gender." Finally, the fact that Mitchell has dismissed independent claims for gender discrimination, harassment, and sexual harassment substantially dents the credibility of Mitchell's claim that she suffered sex-based discrimination, complained about it, and was wrongfully retaliated against.

Mitchell has already had the opportunity, at the Court's urging, to take a hard look at her retaliation claim and plead it in a clear and concise manner. She has failed to do so. CCA's motion to dismiss this claim is therefore **GRANTED**. The claim is **DISMISSED**, with prejudice and without leave to amend.

### III.     Intentional Infliction of Emotional Distress

The elements of a claim for the intentional infliction of emotional distress are well settled. A plaintiff must allege that

> the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress

*Ross v. Creel Printing and Publishing Co.*, 100 Cal.App.4th 736, 744–45 (2002). CCA argues that Mitchell's IIED claim must be dismissed because the conduct she accuses CCA of engaging in isn't, as a matter of law, extreme and outrageous. CCA relies on two cases, *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55 (1996) and *Helgeson v. American Int'l Group, Inc.*, 44 F.Supp.2d 1091 (1999), in which IIED claims were effectively dismissed because the conduct complained of was within the realm of "properly delegated personnel management authority." *Janken*, 46 Cal.App.4th at 79. In other words, the day-to-day business and personnel decisions of management, even if demonstrative of poor judgment,

can't be the basis of an IIED claim. *See Helgeson*, 44 F.Supp.2d at 1096 (discussing a sample of such cases). The plaintiff alleged in *Helgeson* that the defendant, among other things, didn't assign her enough work, threatened to lay her off, issued two baseless reprimands and an inaccurate performance evaluation, and took work away from her. The court found that such actions, "while possibly demonstrating poor business judgment, are not so extreme and outrageous to justify an award for intentional infliction of emotional distress." *Id*. at 1096. *Janken* puts the point this way: "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal.App.4th at 80.

Mitchell's response to this is that an IIED claim *may* be premised on harassment, which "by its nature, constitutes outrageous conduct which exceeds all bounds of decency usually tolerated by a decent society, and will support a cause of action for intentional infliction of emotional distress." (Doc. No. 31.) That's probably an overstatement, and it's not responsive at all to the argument that the specific conduct Mitchell complains about doesn't rise to the level it needs to under the law. Extreme and outrageous conduct, at least of the kind that gives rise to a plausible IIED claim, "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (internal quotations and citations omitted). Liability for the IIED doesn't extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Ankeny v. Lockheed Missiles and Space Co.*, 88 Cal.App.3d 531, 537 (1979) (internal quotations and citations omitted). Courts won't intervene, generally, unless a defendant's conduct is "so severe that no reasonable man could be expected to endure it." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 375, 397 (1970). Harassment *may*, in certain forms, be extreme and outrageous conduct, but it's intellectually lazy on Mitchell's part to say that it is *categorically* so. Mitchell can't just allege that she was harassed and then assume that an IIED claim gets to tag along with the allegation.

Above, the Court referenced three paragraphs in Mitchell's complaint in which she lists "discriminatory, harassing and retaliatory actions" taken against her by CCA. (*See* FAC

¶¶ 15, 19, and 26.) Those are presumably the actions that she believes support her IIED claim, but the problem is that some actions *may* support an IIED claim while others almost certainly do not. Even worse, Mitchell makes no attempt when she actually pleads her IIED claim to specify the alleged actions of CCA on which it is based. Actions that the Court doesn't hesitate to conclude are not "extreme and outrageous" for the purposes of an IIED claim include: (1) Mitchell being "falsely written up for allegedly failing to abide by workplace rules" (FAC ¶ 15-ii)[1]; (2) Mitchell "being subjected to arbitrary and intensive oversight at a more aggressive rate than similarly situated employees" (FAC ¶ 15-iv); (3) Mitchell "being called a 'shop steward' by a prison warden for reporting a worker's compensation injury at the direction of an assistant warden" (FAC ¶ 19-i); (4) Mitchell "being denied the assistance of subordinate employees in the performance of her job duties" (FAC ¶ 19-iii); (5) the prison warden directing a subordinate to schedule employment interviews with unqualified applicants without first consulting Mitchell (FAC ¶ 19-iv); (6) the warden taking no action on Mitchell's request to be transferred to another CCA facility (FAC ¶ 26-ii); (7) and the warden promoting an employee who Mitchell had previously suggested ought to be terminated (FAC ¶ 26-vi). These are precisely the kinds of business or personnel actions taken by management that the case law affirms are not fodder for a IIED claim. *See Helgeson*, 44 F.Supp.2d at 1096; *Gonzales v. City of Martinez*, 638 F.Supp.2d 1147 (N.D. Cal. 2009); *Bragg v. East Bay Reg'l Park Dist.*, No. 02-CV-3585, 2003 WL 23119278 (N.D. Cal. Dec. 29, 2003). This case is really on all fours with *Helgeson*, *Gonzales*, and *Bragg*; adverse employment actions, even if improperly motivated or demonstrative of poor judgment, do not support a claim for IIED.

Mitchell cites *Kovatch v. California Casualty Mgmt. Co.*, 65 Cal.App.4th 1256 (1998), but that case only underscores the difference between Mitchell's workplace grievances and the kind of indignities that can actually sustain an IIED claim. The plaintiff in *Kovatch* was a gay man who alleged a string of insults directed at his sexual orientation: his neighborhood

---

[1] The court in *Helgeson* classified verbal reprimands that, allegedly, had no basis in fact as an "every-day management decision" that couldn't be outrageous conduct.

was referred to by his supervisor as "the fag capitol of San Diego"; the supervisor called other gay employees "fags"; the supervisor spoke generally of his hatred of "faggots"; the plaintiff was ridiculed for taking a male companion to the symphony; the plaintiff was made fun of for not having a wife or children; the supervisor said to the plaintiff, "Let me make something loud and clear to you, Dan. I don't like you. You're a faggot, and there is no place for faggots in this company." *Kovatch*, 65 Cal.App.4th at 1269. Those are the kinds of insults, degradations, and humiliations that are the stuff of workplace-based IIED claims, precisely because they have nothing whatsoever to do with the proper sphere of what goes on in the workplace. *See Helgeson*, 44 F.Supp.2d at 1096. This kind of sustained, personal attack is totally absent from Mitchell's allegations. Mitchell's reliance on *Accardi v. Superior Court*, 17 Cal.App.4th 341 (1993) is also misplaced. The plaintiff in that case, a female police officer, alleged that she was the victim of continuous sexual harassment and discrimination, not just that she suffered from distress caused by alleged misconduct in employer-employee relations.

      Mitchell does, to be fair, make a couple of allegations that don't so obviously implicate the management decisions of her superiors at CCA, or other aspect of the employer-employee relationship. She alleges, for example, that she was "sexually harassed and battered by a co-worker, and thereafter . . . pressured by her management to revise her complaint to prevent her abuser's loss of his job." (FAC ¶ 15-iv.) She alleges that she was "regularly and routinely subjected to verbal abuse from her immediate supervisors, the wardens of the facility" — although she offers no specifics. (FAC ¶ 15-vi.) She alleges that she was "forced . . . to discuss the sexual harassment incident in the presence of a subordinate employee with whom [she] had a well-known adversarial relationship, in violation of CCA policy." (FAC ¶ 26-v.) Finally, she alleges that there was "[o]pen, continual and pervasive sexually-tinged conversations and activity in the workplace," although she does not indicate that she was ever an unwilling recipient. (FAC ¶ 10-viii.) Even with these allegations, however, the management activity of her superiors at CCA is substantially implicated, and it's easy to reach the conclusion that she's complaining about conduct within

the sphere of employment relations. *See Bragg v.* 2003 WL 23119278 at *5 (allegation that defendants subjected plaintiff to verbal and psychological abuse during the course of her employment by telling her she was incompetent, that her job performance was poor, and that she had improperly used her employer's property for private use was insufficient to sustain IIED claim). Besides, as with her retaliation claim, the fact that Mitchell has dismissed causes of action for sexual harassment and sexual discrimination makes it highly unlikely that she can sustain an IIED claim based upon allegations of sexual harassment and sexual discrimination.

It would be beneficial to both Mitchell and the Court if she could point to some case in which allegations such as hers were found to be sufficient for a claim of IIED, but she fails to do so. Instead, as the Court has explained, she recites the broad proposition that harassment can be outrageous conduct, and then she cites two cases in which, unlike this case, numerous and specific instances of harassment based on sexual orientation and sex were alleged and IIED claims were allowed to go forward. *See Bradshaw v. Glatfelter Ins. Group*, No. 08-CV-1898, 2009 WL 1438265 at *4 (E.D. Cal. 2009) (criticizing plaintiff for not distinguishing her circumstances "from situations involving everyday management decisions" and reiterating "conclusory allegations" that defendants' conduct was extreme and outrageous). But this is a different case. The overwhelming majority of Mitchell's grievances relate to incidents that arose out of or during the course of the employment relationship, and as such aren't so extreme or outrageous that they can be the stuff of an IIED claim.

Mitchell has already had one opportunity to amend her IIED claim and plead it in a compelling manner, and she has failed in that regard. When the Court previously dismissed Mitchell's complaint, it advised her to "reference back to the essential underlying facts" when she stated her actual claims. Mitchell opted instead to just recite the elements of an IIED claim, leaving the Court and CCA clueless as to the specific actions of CCA that she believes entitle her to relief. (*See* FAC ¶¶ 68–74.) That is unacceptable. CCA's motion to dismiss the IIED claim is therefore **GRANTED**. The claim is **DISMISSED** with prejudice.

### IV. Negligent Infliction of Emotional Distress

The negligent infliction of emotional distress requires negligent conduct on the part of the defendant, emotional distress on the part of the plaintiff, and some causal relationship between the two. *Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1226 n.1 (2005). The elements of negligent conduct, like the elements of negligence anywhere, are chiefly duty and breach. *See Ess v. Eskaton Properties, Inc.*, 97 Cal.App.4th 120, 126 (2002). The Court **GRANTS** the motion to dismiss Mitchell's negligent infliction of emotional distress claim for the following reasons.

First, in her opposition papers, Mitchell makes no attempt to defend her NIED claim against CCA's arguments for its dismissal. That raises a strong presumption, in the Court's view, that the claim is not righteous.

Second, as with her IIED claim, and in contravention of the Court's guidance, Mitchell simply recites the elements of a NIED claim in her complaint without any kind of reference to specific factual allegations. (*See* FAC ¶¶ 75–80.) This leaves the Court and CCA guessing, still, as to what the actual bases of the claim are.

Third, Mitchell pleads her NIED claim in her amended complaint *exactly* as she pled it in her original complaint, which tells the Court that she did not take its original order dismissing this case to heart and make an earnest attempt to improve the quality of her pleadings.

Fourth, all of the actions of which Mitchell complains were, on her own description, intentional, not negligent. *See Semore v. Pool*, 217 Cal.App.3d 1087, 1105 (1990) (noting that an employer's supervisory conduct is "inherently intentional").

Fifth, Mitchell alleges that "[t]he negligent acts of Defendants, and each of them, were done with malice, fraud, and oppression, and with conscious disregard for the Plaintiff's rights," which sounds more like the *intentional* infliction of emotion distress than *negligent* infliction. Intent is one of the elements of common law fraud, *see Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173–74 (2003), and malice and oppression also entail knowing and volitional activity on the part of the perpetrator. Obviously, Mitchell alleges malice, fraud, and

oppression because she seeks punitive damages, but in the Court's analysis the manner in which these allegations are framed has the potential to do the very claim they purport to modify.

Sixth, as with Mitchell's IIED claim, to the extent her NIED claim is premised upon allegations of sexual discrimination and sexual harassment, it is deflated by the simple fact that Mitchell has voluntarily dismissed those independent causes of action based on those allegations.

## V.   Conclusion

When the Court dismissed Mitchell's original complaint for being, in essence, a shotgun pleading in which an avalanche of allegations are made, and then a snowball of claims that fail to state the facts pertinent to each, it provided ample guidance for amendment. Mitchell did not take the Court's order of dismissal seriously, however. Her complaint still alleges more facts than it needs to, and it still states claims in a rather formulaic manner by reciting their respective elements and not much else. For the reasons given above, Mitchell's retaliation claim and emotional distress claims are **DISMISSED**, with prejudice and without leave to amend. That leaves her claim for wrongful termination in violation of public policy, which is, in the Court's judgment, a fair result. That claim gets to the core of this case, as opposed to the the others that appear to have been ladled onto the complaint despite their poor fit to the facts alleged.

**IT IS SO ORDERED**.

DATED: August 6, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge